UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JERRY LYNN POWERS,<br><br>　　　　　　Defendant. | CR15-166 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendant Jerry Lynn Powers's motion for compassionate release, docket no. 50. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Defendant pleaded guilty to possession of child pornography and receipt of child pornography and was sentenced on May 12, 2016, to ten years in the custody of the United States Bureau of Prisons ("BOP"). *See* Judgment (docket no. 38). Defendant self-surrendered on June 17, 2016, and is currently incarcerated at Federal Correctional Institution ("FCI") Lompoc in California, with a projected release date of December 16, 2024. He seeks immediate release on the ground that his age (71), gender (male), and medical conditions (hypertension, history of skin cancer, and previous positive result on a

ORDER - 1

test for the coronavirus that causes Coronavirus Disease 2019 ("COVID-19")) increase the possibility of acute illness or death from COVID-19 and warrant a reduction in his sentence. The Court concludes otherwise.

**Discussion**

**A.      Standard for Compassionate Release**

A sentence is generally considered final and may not be altered except in limited circumstances. See 18 U.S.C. § 3582(b); see also Dillon v. United States, 560 U.S. 817, 824 (2010). Prior to 2018, a modification for reasons other than a post-conviction lowering of the applicable sentencing range, could be made only upon a motion brought by the Director of BOP. See United States v. Rodriguez, --- F. Supp. 3d ---, 2020 WL 1627331 at *2 (E.D. Penn. Apr. 1, 2020). Congress has since enacted the First Step Act of 2018, which permits a defendant, after exhausting administrative remedies,[1] to directly request a reduction in the term of incarceration. See 18 U.S.C. § 3582(c)(1)(A). The First Step Act did not, however, amend the two statutorily-enumerated grounds for compassionate release, namely (i) the existence of "extraordinary and compelling reasons" supporting a reduction; or (ii) the satisfaction of certain criteria for a defendant sentenced to life imprisonment under 18 U.S.C. § 3559(c). See id. at § 3582(c)(1)(A)(i) & (ii). The second basis for relief does not apply in this case, and thus, defendant Jerry

---

[1] The exhaustion requirement is satisfied on the earlier of (i) the resolution of an administrative appeal concerning BOP's failure to bring a motion for early release on a defendant's behalf, or (ii) the lapse of thirty (30) days after the warden of the facility at which the defendant is in custody receives a request to make such motion. 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant in this matter has met the prerequisite of exhaustion.

ORDER - 2

Lynn Powers bears the burden of establishing that "extraordinary and compelling reasons" justify a decrease in the term of his imprisonment.  See Riley v. United States, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020).

B.   **Extraordinary and Compelling Reasons**

As adopted in 1984, the statute did not define "extraordinary and compelling reasons," but rather delegated to the United States Sentencing Commission the task of describing the grounds for a sentence reduction that would qualify as "extraordinary and compelling."  See 28 U.S.C. § 994(t); see also Pub. L. No. 98-473, §§ 212(a)(2) & 217(a), 98 Stat. 1837, 1998 & 2019 (1984).  The Commission promulgated United States Sentencing Guideline ("USSG") § 1B1.13, the application notes of which describe three categories of potentially "extraordinary and compelling reasons," namely medical condition, age, and family circumstances, see USSG § 1B1.13 cmt. n.1(A)-(C), as well as a "catch-all" provision, id. cmt. n.1(D), which "opens the door" to considering factors other than those specifically enumerated, see United States v. McPherson, --- F. Supp. 3d ---, 2020 WL 1862596 at *4 (W.D. Wash. Apr. 14, 2020).  USSG § 1B1.13 has not been updated since the passage of the First Step Act, and district courts nationwide are split on the question of whether the Commission's list of "extraordinary and compelling reasons" is binding.[2]  See United States v. Almontes, 2020 WL 1812713 at *3 & n.5 (D. Conn.

---

[2] The Government cites Dillon for the proposition that USSG § 1B1.13 is binding.  See Resp. at 7 (docket no. 54).  Dillon, however, did not involve a motion for compassionate release under § 3582(c)(1), but rather a motion pursuant to § 3582(c)(2) for a reduction in light of a decrease in the sentencing range.  See 560 U.S. at 819.  Moreover, Dillon predates the First Step Act and did not address whether the pre-existing application notes restrict the Court's discretion with regard to what constitutes an "extraordinary and compelling" reason for compassionate release.

ORDER - 3

Apr. 9, 2020); *see also* United States v. Sandoval, 2020 WL 3077152 at *3-4 (W.D. Wash. June 10, 2020).  The Court concludes that the comments to USSG § 1B1.13 do not constrain the Court in evaluating whether the grounds for release articulated by defendant are "extraordinary and compelling," but they do provide helpful guidance.  *See* United States v. Locke, 2020 WL 3101016 at *4 (W.D. Wash. June 11, 2020); *Rodriguez*, 2020 WL 1627331 at *4-6.

### 1. Current Medical Condition

The Commission's application notes outline two circumstances in which an inmate's medical condition might constitute an "extraordinary and compelling" reason for compassionate release:  (i) an inmate is suffering from a terminal illness; or (ii) an inmate is suffering from, and not expected to recover from, a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health as a result of the aging process, which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(i)&(ii).  In this case, although defendant mentions a possible recurrence of skin cancer (basal cell carcinoma), as well as his ongoing hypertension, he does not suggest that he has received a prognosis of probable death in the near future, and thus, he does not fall within the first scenario.

The second situation involves defendants who are currently suffering from disabling disorders.  The related standard is incompatible with defendant's contention that a constellation of otherwise non-impairing ailments might increase the likelihood of fatality from another, yet to be contracted, disease.  Nevertheless, defendant contends that

ORDER - 4

he has demonstrated "extraordinary and compelling reasons" for release because FCI Lompoc's structural design[3] and pandemic protocols render him unable to engage in the "self-care" necessary to avoid infection with the coronavirus that causes COVID-19.[4] This argument misconstrues the application note at issue, which inquires whether a defendant's physical and/or mental condition is so compromised that it can no longer be managed in prison. See *United States v. Reynolds*, 2020 WL 3266532 at *4 (W.D. Wash. June 17, 2020); *Riley*, 2020 WL 1819838 at *7. The Court declines defendant's invitation to focus on external factors inherent in confinement or the facility or arising from BOP's procedures. Such factors affect the risk of contagion for everyone at the correctional institution, and defendant's proposed analysis offers no means of identifying specific individuals deserving of compassionate release. Under the criteria outlined in the comments to USSG § 1B1.13, defendant does not demonstrate a current medical condition rising to the level of an "extraordinary and compelling" reason for a sentence reduction.

---

[3] FCI Lompoc has multiple dormitories, each housing 80 or more inmates, in which social distancing is difficult. See *United States v. Pippin*, 2020 WL 2602140 at *1 (W.D. Wash. May 20, 2020).

[4] According to BOP's website, less than one week after defendant's motion for compassionate release noted for consideration, FCI Lompoc had only one inmate and six staff members with positive coronavirus test results, while 878 inmates and 12 staff members had "recovered" from their infections. See https://www.bop.gov/coronavirus/ (visited at 9:30 a.m. PDT on June 18, 2020). Moreover, as of that date, FCI Lompoc, which has a capacity of 992 inmates, had tested 993 individuals, 929 of whom had positive results. *Id.* Two inmates have died. *Id.* Defendant challenges BOP's use of the term "recovered," but the fact remains that, despite almost universal spread of the disease among the population at FCI Lompoc, BOP has demonstrated an ability to manage the health consequences of COVID-19.

## 2. **<u>Risk of Death From Known Pathogen</u>**

The Commission's "medical condition" criteria are not well-suited to the current crisis involving COVID-19. In other cases in which inmates have sought release based on their fears of developing serious complications or dying from COVID-19, courts have considered one or more of the following factors: (i) whether the inmate is at higher risk because of his or her age[5] and/or race, see <u>United States v. Young</u>, 2020 WL 2614745 at *3 (W.D. Wash. May 22, 2020); (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19, <u>see Locke</u>, 2020 WL 3101016 at *4 (observing that the movant's health issues were "not merely self-diagnosed," but rather "medically documented and verified"); (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19, <u>see Rodriguez</u>, 2020 WL 1627331 at *7 (summarizing COVID-19 fatality rates); <u>Pippin</u>, 2020 WL 2602140 at *1 (granting a motion brought by a defendant suffering from pancytopenia, which is associated with an "over fivefold enhanced risk of severe COVID-19"); (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease, <u>Reynolds</u>, 2020

---

[5] In its application notes, the Commission has indicated that a defendant's age constitutes an "extraordinary and compelling" reason for compassionate release only if the defendant (i) is at least 65 years old, (ii) is experiencing a serious deterioration in physical or mental health because of the aging process, and (iii) has served at least the lesser of 10 years or 75 percent of his or her term of imprisonment. USSG § 1B1.13 cmt. n.1(B). Defendant does not meet the second and third criteria and does not seek a sentence reduction on the basis of age alone.

ORDER - 6

WL 3266532 at *3-4 (denying a motion for compassionate release brought by an inmate at FCI Lompoc who recovered from and was "not suffering from any reported lingering symptoms" related to COVID-19); and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19, see Sandoval, 2020 WL 3077152 at *5 (declining to release a defendant to a situation that "would likely place him at greater risk").  The Court has discretion to consider the above factors in light of the "catch-all" provision of the Commission's application notes, as well as the non-binding status of the comments to USSG § 1B1.13.  This list is not exhaustive, and the Court recognizes that other factors[6] might be relevant in future cases.

In this matter, however, having considered the enumerated factors, the Court concludes that defendant has not established the level of risk associated with COVID-19 that warrants a reduction in defendant's sentence.  Although defendant's age increases his susceptibility to COVID-19, his race does not, and he is otherwise in good health; his hypertension is well-controlled with prescribed medications, see Ex. B to Def.'s Mot. (docket no. 51 at 12, 17, & 74), and he offers no medical documentation to support his concern that recent patches on his skin are symptoms of cancer.  Defendant provides no

---

[6] Defendant contends that gender should also be considered in assessing the risk of mortality from COVID-19, but he cites no case in which a court has done so.  Defendant relies solely on an article issued by the Brookings Institution, but rather than supporting his position, this report suggests that the "gender gap" decreases with age and varies significantly by country, with Canada and the United States experiencing less disparity than China, Mexico, and various European nations, indicating that something other than gender is involved.  See Richard V. Reeve and Tiffany Ford, "COVID-19 Much More Fatal for Men, Especially Taking Age Into Account" (available at https://www.brookings.edu/blog/up-front/2020/05/15/covid-19-much-more-fatal-for-men-especially-taking-age-into-account/).

ORDER - 7

statistics concerning the fatality rate for persons with high blood pressure and no other pre-existing morbidity who contract COVID-19,[7] and in each of the cases he cites, the inmate who was granted compassionate release had at least one other disorder besides hypertension.  On May 7, 2020, defendant tested positive for the coronavirus that causes COVID-19, but he was asymptomatic, and he has provided no evidence that the coronavirus had any adverse effects on his health.  Defendant contends, however, that individuals who were asymptomatic when initially testing positive for the coronavirus might not have developed sufficient antibodies to prevent reinfection and might have more severe reactions upon re-exposure.  This assertion is entirely speculative and unsubstantiated by medical evidence, and it merely raises generalized concerns that do not support a finding of "extraordinary and compelling reasons" for reducing defendant's sentence.  *See* *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also* *United States v. Williams*, 2020 WL 3037075 at *3-4 (W.D. La. June 5, 2020).

In light of the Court's ruling that defendant has not made the requisite showing of "extraordinary and compelling reasons" for compassionate release, the Court need not

---

[7] Indeed, the evidence is mixed and multiple studies have reached different conclusions about the COVID-19 risks associated with hypertension.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (visited June 26, 2020).  The Centers for Disease Control and Prevention identified (i) certain conditions that increase the risk of severe illness from COVID-19, and (ii) other conditions that "might" increase such risk; hypertension is not on the former, but rather on the latter, list.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-with-medical-conditions.html (visited June 26, 2020); *see also* *Rodriguez*, 2020 WL 1627331 at *7 n. 15 (observing that "[t]he relationship between hypertension and elevated risk from COVID-19 is not fully understood" and that some experts have opined that "high blood pressure alone is not a risk factor," but might be of concern when "combined with another underlying health condition").

analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statement issued by the United States Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's motion for compassionate release, docket no. 50, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 1st day of July, 2020.

Thomas S. Zilly
United States District Judge